**Thomas T. Booth, Jr., Esquire (5131)**
**LAW OFFICES OF THOMAS T. BOOTH, JR., LLC**
**129 West Evesham Road**
**Voorhees, NJ 08043**
**Tel: (856) 354-6060**
**Fax: (856) 354-6033**
**BoothLaw@comcast.net**
**Attorneys for Plaintiff, Shelley Efymow**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | |
| | CHAPTER 7 |
| EDWARD D. HOLFELNER, JR. | CASE NO. 14-33952 |
| Debtor | |
| SHELLEY EFYMOW, | |
| Plaintiff, | ADV. NO. |
| vs. | |
| EDWARD D. HOLFELNER, JR., | |
| Defendant | |

**COMPLAINT TO DETERMINE DISCHARGE OF DEBT**
**AND FOR OTHER RELIEF**

NOW COMES, Shelley Efymow, by and through her counsel, Thomas T. Booth, Jr., Esquire, to file the within Complaint to Determine Dischargeability of Debt and for Other Relief, and in support thereof states as follows:

**PARTIES**

1. Plaintiff, Shelley Efymow (hereinafter "Shelley" or "Plaintiff"), is an individual residing at 121 Eighth Avenue, Mt. Ephraim, New Jersey 08059.

2. Defendant, Edward D. Holfelner (hereinafter "Holfelner" or "Defendant"), upon information and belief, is an individual residing at 158 Uxbridge, Cherry Hill, New Jersey 08034.

**FACTS**

3. At all relevant times herein, upon information and belief, Defendant Holfelner was employed by Prism Career Institute, Inc. ("Prism") and acted in his capacity as an employee thereof.

4. Upon information and belief, Prism operates a business which offers to the general public, to include Plaintiff, a program of instruction towards obtaining a degree as a licensed practical nurse (LPN).

5. In or around January 2014, Plaintiff Shelley enrolled in the LPN program at Prism.

6. The aforementioned LPN program was a fifteen month program.

7. One of the instructors assigned to Shelley for the program was Defendant Holfelner.

8. Almost from the beginning, Defendant Holfelner began to pursue Plaintiff Shelley via text messages and other

inappropriate conduct that occurred throughout Shelley's first term.

9. Defendant Holfelner began texting Shelley on days and at times that were unusual, such as on weekends at night.

10. Holfelner texts would ask Shelley to call him to discuss "grades" because, he said, he could not text grades over the phone.

11. Defendant Holfelner also began showing Shelley unwanted and obvious attention in the classroom, for example, by buying coffee only for Shelley in the morning.

12. Defendant Holfelner also asked Shelley to stay after class with him, promising to give her answers to the upcoming tests, but only if they were in the room together and alone.

13. Defendant Holfelner also sent numerous multiple texts to Shelley to come over to his home, indicating he wanted Shelley to play with his daughter.

14. Defendant Holfelner also asked Shelley to be a nanny for him, which Shelley declined.

15. On one of the days when school was cancelled due to a snow storm in early 2014, Defendant Holfelner texted Shelley to come over and, when Shelley did not answer, he began repeatedly texting her, eventually sending Shelley a picture message of his daughter with the text saying, "Come over."

16. Defendant Holfelner also brought his daughter to class one day, telling her to sit on Shelley's lap.

17. Defendant Holfelner asked Shelley at one point if she was dating anyone, and when she responded "yes," Holfelner immediately demanded to know about the relationship and thereafter would constantly bring it up with Shelley.

18. On one occasion, Holfelner touched Shelley's hand asking her if her boyfriend had bought her the ring she was wearing.

19. Defendant Holfelner texted Shelley late one Friday night, telling her she had done very well on one of her tests and wanted to call her to give her specific score because he could not text something like that.

20. When Shelley asked others in class the next day if Defendant Holfelner had contacted them, they all indicated he had not.

21. Defendant Holfelner would also text Shelley in the morning about the snow on the roads, without texting anyone else in the class.

22. Defendant Holfelner asked Shelley if she would be a nanny for him and come to the house so he could show her around the house and explain nanny responsibilities. Shelley declined.

23. On one occasion, Shelley took a test in the class, and when the test was completed, Holfelner directed Shelley to go to an empty class room next door so he could review her test with her. Shelley complied. At one point, she looked down at her test paper and Defendant Holfelner came up behind her

and started stroking her hair out of her eyes and behind her ears.

24. Defendant Holfelner would repeatedly ask Shelley to stay after class with him to help with a "project;" Shelley declined.

25. Defendant Holfelner would also ask Shelley to go out to his car and retrieve some things for him; when she declined, he would beg her and be persistent, and when Shelley suggested he have another student do so, he replied, "I want you to do it."

26. Defendant Holfelner would also text to Shelley while she was sitting in class about getting coffee.

27. Defendant Holfelner asked Shelley what bars she had been to or goes to around her house.

28. Defendant Holfelner always wanted to be alone with Shelley. For instance, if there was another student in the computer lab, he would tell Shelley he needed her to move to a different print room that was empty.

29. Defendant Holfelner's actions made Shelley very uncomfortable once it became obvious as to his actions and treatment of her, as other classmates noticed his behavior towards Shelley, making Shelley feel awkward and uncomfortable in class.

30. When Shelley would attempt to ignore Defendant Holfelner's texts, he became very aggravated.

31. Since Shelley was rebuffing Defendant Holfelner's advances, he began to point her out and embarrass her in front of other teachers and her classmates, on one occasion noting her appearance in a negative fashion.

32. On another occasion, when a roster of names was posted of students who could not start clinicals, Defendant Holfelner saw Shelley's name and started making comments such as "Oh, Efymow can't go to clinicals."

33. When Shelley went into the nursing office to discuss the clinicals issue with Ms. Sumtner, Defendant Holfelner came into the office uninvited and began making fun of Shelley.

34. Shelley told Defendant Holfelner to leave and asked the nursing director to shut the door.

35. Defendant Holfelner repeatedly asked Shelley why she was ignoring him and he would get upset about her lack of return of his advances.

36. Overall, Defendant Holfelner created a hostile environment for Shelley, leading to a point where she could not function and eventually withdrew from the program.

37. Shelley attempted to return to the program and, when she learned she would have Defendant Holfelner as a teacher again in the future, she could not bring herself to re-enroll.

38. Shelley never gave Defendant Holfelner her telephone number, and upon information and belief, Defendant Holfelner must

have accessed Shelley's student file to obtain her cell phone number without Shelley's permission.

39. Shelley had borrowed money to attend Prism's program and is now being pursued to repay the loan, even though she withdrew from Prism's program due to Defendant Holfelner's persistent and unwanted attention, conduct and harassment.

## COUNT ONE

### OBJECTION TO DISCHARGE PURSUANT TO 11 U.S.C. §523(a)(6)

40. Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

41. The conduct described herein caused willful and malicious injury by the Debtor to Plaintiff.

42. 11 U.S.C. §523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or the property of another entity."

WHEREFORE, it is respectfully requested that this Court determine the amount of the debt due Plaintiff, which is believed to be an amount in excess of $15,000.00, and that said sum be reduced to judgment and not be discharged, and that Plaintiff be awarded such other and further relief as is just, including reasonable costs and attorneys' fees.

## COUNT TWO

### (Sexual Harassment)

43. Plaintiff incorporates the preceding paragraphs of the complaint as if same were fully set forth herein at length.

44. Defendant Holfelner harassed Shelley because of her gender.

45. When Shelley rebuffed Defendant Holfelner's advances, he created a hostile learning environment.

46. Defendant Holfelner stood in a position of authority over Shelley and abused that authority in an effort to satisfy his own desires.

47. Defendant Holfelner's conduct was severe and/or pervasive enough to make a reasonable man or woman believe that the conditions of her education were altered and the working environment is hostile or abusive.

48. Plaintiff has been caused to sustain damages as a result of Defendants' conduct.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, punitive damages, attorneys' fees, costs of suit, interest and such other relief as the Court may deem proper and just.

## COUNT THREE

### (Violation of Law Against Discrimination)

49. Plaintiff incorporates the preceding paragraphs of the complaint as if same were fully set forth herein at length.

50. Defendant Holfelner's conduct is an unlawful discrimination based upon Shelley's sex/gender in violation of N.J.S.A. 10:5-1, et seq.

51. Plaintiff has been caused to sustain damages as a result of Defendant's conduct.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, punitive damages, attorneys' fees, costs of suit, interest and such other relief as the Court may deem proper and just.

## COUNT FOUR

### (Battery)

52. Plaintiff incorporates the preceding paragraphs of the complaint as if same were fully set forth herein at length.
53. Defendant Holfelner intentionally touched Shelley without her consent.
54. Defendant Holfelner's conduct was done with wanton disregard of Shelley's personal rights and sensitivities.
55. Defendant Holfelner's conduct was done with a foreseeability of unintended harmful consequences.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, punitive damages, attorneys' fees, costs of suit, interest and such other relief as the Court may deem proper and just.

## COUNT FIVE

### (Intentional Infliction of Emotional Distress)

56. Plaintiff incorporates the preceding paragraphs of the complaint as if same were fully set forth herein at length.
57. Defendant Holfelner's conduct as set forth herein was extreme and outrageous.

58. Defendant Holfelner engaged in such conduct intentionally in a fashion to produce emotional distress, or recklessly in deliberate disregard of a high degree of probability that emotional distress to Shelley will follow.

59. Defendant Holfelner knew or should have known that the conduct was reasonably likely to cause Shelley to sustain emotional distress.

60. Defendant Holfelner's actions proximately caused Shelley emotional distress so severe that no reasonable person in Shelley's position could be expected to endure it.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, punitive damages, attorneys' fees, costs of suit, interest and such other relief as the Court may deem proper and just.

LAW OFFICES OF THOMAS T. BOOTH, JR., LLC
Attorneys for Plaintiff

By: _____
Thomas T. Booth, Jr., Esquire

Date: May 20, 2015